Argued June 15, reversed and remanded July 9, 1970

PYKONEN, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*

471 P2d 855

*Maynard Wilson,* Cottage Grove, argued the cause
and filed the brief for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and James P. Cronan, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C.J.

This is a workmen's compensation case in which the injured claimant contends he should receive a permanent total disability award.

While working as a logger on February 22, 1966, he was struck in the back by a falling snag. The initial objective findings of injury included multiple fractures of the right ribs, fracture of the right clavicle, fracture of lower right fibula, some hemopneumothorax and ileus. Some disorientation, hallucinations and amnesia were noted during his hospitalization following the accident and it was subsequently determined that he had probably suffered some brain damage.

The Workmen's Compensation Board order which was affirmed by the circuit court indicates it felt that this claim posed a difficult problem in drawing the line between partial and total disability. The Board's order in pertinent part reads as follows:

"The Board finds that the claimant does have substantial residual disabilities. These disabilities, considering the probabilities of some brain damage, merits award of the maximum then allowable for other injuries which in this instance is 192 degrees. Such other injuries could actually exceed in fact the limitation of 192 degrees but if the disabilities are partial rather than total, the award payable is limited to the stated 192 degrees.

"The Board concludes that the claimant's disabilities, substantial as they are, have not totally disabled the claimant. The record of his work at return to commercial fishing may well support a finding that the claimant's need of assistance in certain aspects of fishing preclude a return to that occupation. The description of the work he was actually able to accomplish, however, demonstrates that the physical disabilities are short of being totally disabling."

■ We are well aware that both the administrative agency and the court below drew the line short of permanent total disability, but our de novo review of the record leads us to conclude that the claimant at the time the record was made was permanently and totally disabled in that he was then incapable of "* * * regularly performing any work at a gainful and suitable occupation." ORS 656.206(1).[①]

The facts which lead us to this conclusion are as follows:

The claimant, now 61 years old, is for practical purposes illiterate and spent a good part of his adult life as a logger and more recently as a deep-sea fisherman. The director of the Psychology Center of the Workmen's Compensation Board reported that the claimant's illiteracy would prevent him from doing any type of clerical work and concluded:

"It seems unlikely that this patient will ever return to full time productive work. He certainly

[①] There is a possibility as indicated by the testimony of one of the doctors that the claimant's condition may improve in some degree in the future. If this should come to pass the defendant can invoke the provisions of ORS 656.325(3), which provides:

"A workman who has received an award for unscheduled permanent total or unscheduled partial disability should be encouraged to make a reasonable effort to reduce his disability; and his award shall be subject to periodic examination and adjustment in conformity with ORS 656.268."

cannot be considered as an acceptable candidate for vocational rehabilitation."

One of the Workmen's Compensation Board's medical examiners made a detailed report on August 28, 1967, in which he concluded:

"This patient's condition appears to be stationary at this time. He has severe permanent partial disability as a result of his multiple injuries but particularly as a result of the head injury. I rather doubt the possibility of rehabilitating this gentleman for any type of work. I believe his claim may be closed at this time."

A neurologist who made a detailed examination of the claimant, including a review of medical reports from other doctors, stated that for practical purposes he was totally disabled. He said that the claimant could never again be a logger and could not be a fisherman if it meant more than sitting with a pole in his hand. He did say that it was possible that claimant might improve a little after the tensions of pending litigation in connection with his claim for compensation had terminated. In relating claimant's physical and mental condition to ability to work the doctor said that any work would have to be the kind which required little thinking and produced no emotional stress. When asked what kind of work he might be able to do he responded by saying, "It would have to be some sort of light work, and one with not too much responsibility. I suppose he could do watchman kind of work, that kind of thing, if he didn't have to sweep up also; that kind of thing."

The only testimony of physical work done by the claimant subsequent to the accident consisted of some casual work around his home which he did inter-

mittently and with difficulty, some driving which produced nausea and vomiting, an attempt at clamming which debilitated him to the point that he spent the next three days without leaving his home and miscellaneous other brief activities of like nature and with like results.

■ This evidence of ability to engage in brief periods of limited activity and then only with adverse consequences does not constitute substantial evidence of ability to work regularly at a gainful and suitable occupation. The preponderance of evidence is to the contrary.

Reversed and remanded for entry of an order in accord with this opinion.